The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 29, 2018

## 2018COA168

**No. 16CA1165, *People v. Lancaster* — Criminal Procedure — Appearance of Counsel — Termination of Representation; Attorneys and Clients — Ineffective Assistance of Counsel**

A criminal defendant and his trial counsel executed a fee agreement providing that the representation of counsel terminates at the conclusion of trial. Following trial, trial counsel informed defendant that he would not represent him on appeal, but trial counsel did not move to withdraw from the representation. Defendant did not thereafter timely file a notice of direct appeal.

In this opinion, the division addresses an issue of first impression: whether trial counsel's failure to perfect the defendant's appeal constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), such that defendant is entitled to file his direct appeal out of time. The division concludes that,

under *People v. Baker,* 104 P.3d 893 (Colo. 2005), trial counsel's representation of a criminal defendant terminates only as provided under Crim. P. 44(e), notwithstanding the fee agreement, and, therefore, trial counsel's duty to perfect the defendant's appeal is not discharged until the representation terminates pursuant to Crim. P. 44(e).

COLORADO COURT OF APPEALS 2018COA168

Court of Appeals No. 16CA1165
Jefferson County District Court No. 06CR1949
Honorable Todd L. Vriesman, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Larry Gene Lancaster,

Defendant-Appellant.

ORDER REVERSED

Division I
Opinion by JUDGE WELLING
Taubman and Bernard, JJ., concur

Announced November 29, 2018

Cynthia H. Coffman, Attorney General, Brenna A. Brackett, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Leslie A. Goldstein, Alternate Defense Counsel, Steamboat Springs, Colorado, for Defendant-Appellant

¶ 1      Defendant, Larry Gene Lancaster, contends that the district court erroneously denied his Crim. P. 35(c) motion alleging that his trial counsel was ineffective for failing to perfect his appeal. We agree and, therefore, reverse the district court's order denying Lancaster's Crim. P. 35(c) motion and order that Lancaster is entitled to file his direct appeal out of time.

## I.      Background

¶ 2      In 2006, Lancaster was arrested after a teenage boy reported that Lancaster had provided him with marijuana and alcohol and initiated sexual contact. A second teenage boy later came forward with similar allegations. Lancaster was charged with sexual assault on a child (two counts), bribing a witness or victim (two counts), sexual assault, unlawful sexual contact, and contributing to the delinquency of a minor.

¶ 3      In May 2007, Lancaster went to trial. He was represented at trial by Steven Newell. Newell and Lancaster executed a fee agreement detailing the scope of Newell's representation. The termination provision of that fee agreement provided as follows:

> Under Colorado Court rules, representation is terminated at the conclusion of trial court proceedings, which essentially is after a

1

> finding of not guilty or a sentencing, unless
> otherwise directed by the Court or by
> agreement between you and Newell Vonachen
> and Weeks to represent you beyond that point.

¶ 4 The jury ultimately found Lancaster guilty on six of the seven counts. In October 2007, he received an indeterminate sentence of fourteen years to life. In December 2007, Lancaster filed a motion requesting additional presentence confinement credit. In that motion, Lancaster described himself as pro se. Neither he nor Newell filed a notice of appeal.

¶ 5 In September 2010, Lancaster filed a pro se Crim. P. 35(c) motion alleging that his trial counsel had been constitutionally ineffective by failing to file a notice of appeal. In his motion, Lancaster requested the appointment of postconviction counsel. The district court appointed the public defender to represent him in the postconviction proceedings.

¶ 6 Neither the public defender nor the district court took any action on Lancaster's Crim. P. 35(c) motion for more than five years. In February 2016, sixty-four months after Lancaster's original motion was filed, postconviction counsel filed a supplemental Crim. P. 35(c) motion. In the supplemental motion, Lancaster renewed

the ineffective assistance of trial counsel claim from his September 2010 motion and added five additional claims. The district court ruled that the additional claims were time barred, but it held an evidentiary hearing on Lancaster's first claim — that his trial counsel's failure to perfect his appeal deprived him of constitutionally effective trial counsel. As reflected in the district court's subsequent order, Lancaster based his claim on "ABA recommended standards regarding criminal justice practice," not "Crim. P. 44 or . . . case law regarding ineffective assistance of counsel."

¶ 7    Newell and Lancaster testified at the hearing. In a four-page order issued on May 26, 2016, the district court found that Lancaster had met with Newell after his conviction but before sentencing and stated his desire to appeal his conviction. The district court also found that Newell met with Lancaster three times after trial, during which time Newell "made clear, in writing and verbally, that he would not act as [Lancaster's] attorney for an appeal." Based on its conclusion that Newell's representation terminated before the alleged ineffective assistance occurred, the

district court denied Lancaster's ineffective assistance of trial counsel claim.

¶ 8     This appeal followed.

## II.     Analysis

¶ 9     On appeal, Lancaster relies on *People v. Baker*, 104 P.3d 893 (Colo. 2005), contending that Newell was constitutionally ineffective in failing to file a notice of appeal on his behalf.  The People respond that Lancaster's ineffective assistance claim must fail because Newell's attorney-client relationship with Lancaster terminated pursuant to the undisputed terms of the fee agreement after Lancaster was sentenced on October 1, 2007.  In addition, the People contend that *Baker* is distinguishable.  We are unpersuaded by either of the People's contentions and conclude that Newell's failure to either file a notice of appeal on Lancaster's behalf or withdraw pursuant to Crim. P. 44(d) and secure the appointment of the public defender to represent Lancaster on direct appeal constituted ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

4

## A. Law

### 1. Ineffective Assistance on Appeal

¶ 10    The Sixth Amendment of the United States Constitution and article II, section 16 of the Colorado Constitution guarantee the effective assistance of counsel. *Strickland*, 466 U.S. at 686; *Lanari v. People*, 827 P.2d 495, 500 (Colo. 1992). Claims of ineffective assistance of counsel are governed by the test set forth in *Strickland*. Under this test, a defendant must show that (1) counsel's representation "fell below an objective standard of reasonableness" and (2) counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 688, 694.

¶ 11    Where a defendant's claim is that trial counsel failed to perfect an appeal, we do not analyze the merits of the defendant's appellate claims. *See People v. Long*, 126 P.3d 284, 286-87 (Colo. App. 2005). Rather, a defendant who shows that counsel performed deficiently in failing to perfect the defendant's appeal will have established both prongs of the *Strickland* test. *Id.* In Colorado, "the right to direct appeal of a criminal conviction is fundamental," *Peterson v. People*, 113 P.3d 706, 708 (Colo. 2005), and "a lawyer who disregards specific instructions from the defendant to file a notice of

appeal acts in a manner that is professionally unreasonable," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). In such cases, "[t]he prejudice resulting from the failure to file a notice of appeal is not in the outcome of the proceeding itself, but in the forfeiture of the proceeding itself." *Long*, 126 P.3d at 286-87 (citing *Flores-Ortega*, 528 U.S. at 483).

## 2.   *Baker*

¶ 12     The *Baker* court determined that good cause existed under C.A.R. 26(b) to permit the defendant to pursue an untimely direct appeal because trial counsel's failure to perfect the defendant's appeal constituted ineffective assistance of counsel under *Strickland*. 104 P.3d at 898. *Baker* warrants close examination.

¶ 13     Baker was convicted of multiple felony offenses. After sentencing, he prepared a handwritten notice of appeal, which he showed to his trial counsel. Baker and his counsel agreed that counsel would not represent Baker on appeal, but counsel offered to type and submit Baker's notice of appeal "as a courtesy." *Id.* at 895. But counsel ultimately failed to file the notice of appeal in the correct court, and Baker's appeal was thus not perfected. *Id.*

¶ 14    Two years later, after Baker learned that the notice of appeal had been incorrectly filed in the district court, he filed a new notice of appeal. This court issued an order directing Baker to show cause why the notice of appeal should not be dismissed for lack of jurisdiction due to its untimeliness. Baker argued in response that dismissal of his appeal would be unfairly prejudicial, as the failure to file a timely notice of appeal was caused by the ineffective assistance of his trial counsel, who had failed to perfect his direct appeal. A division of this court dismissed his appeal as untimely. *Id.*

¶ 15    Baker then petitioned the supreme court for relief pursuant to C.A.R. 21. The supreme court issued a rule to show cause why his appeal should not be accepted and ultimately concluded that the court of appeals abused its discretion in rejecting Baker's appeal. It held that, notwithstanding counsel's agreement with Baker that he would not represent him on appeal, Crim. P. 44(e) dictated that counsel's responsibilities to his client did not end at sentencing. *Id.* at 896. Crim. P. 44(e) provides as follows:

> (1)    Unless otherwise directed by the trial court or extended by an agreement between counsel and a defendant, counsel's

7

representation of a defendant, whether retained or appointed, shall terminate at the conclusion of trial court proceedings and after a final determination of restitution. Trial court proceedings shall conclude at the point in time:

(I)     When dismissal is granted by the court and no timely appeal has been filed;

(II)    When an order enters granting a deferred prosecution, deferred sentence, or probation;

(III)   After a sentence to incarceration is imposed upon conviction when no motion has been timely filed pursuant to Crim. P. 35(b) or such motion so filed is ruled on; or

(IV)   When a notice of appeal is filed by the defendant.

¶ 16     In *Baker,* trial court proceedings had not concluded within the meaning of subsection (I), (II), or (III) when the then-applicable forty-five-day period for Baker to file a notice of appeal under C.A.R. 4(b) expired.[1] Nor had appellate counsel been appointed. The supreme court held that Baker's trial counsel had, therefore, provided constitutionally ineffective assistance under *Strickland* in failing to properly file Baker's notice of appeal. The supreme court

[1] In 2011, the rule was amended to allow forty-nine days. Rule Change 2011(19), Colorado Appellate Rules (Amended and Adopted by the Court En Banc, Dec. 14, 2011), https://perma.cc/KLV3-S9CE.

considered trial counsel's ineffective assistance "as a factor contributing to a finding of good cause" for permitting Baker to pursue an untimely direct appeal. *Id.* at 897.

## B.     Reversal Is Required Under *Baker*

¶ 17     On appeal, the People contend that Newell's failure to file a notice of appeal on Lancaster's behalf was not ineffective assistance because Newell's representation of him terminated when Lancaster was sentenced on October 1, 2007. The People, in arguing that the attorney-client relationship terminated before the alleged ineffective assistance occurred, rely on the termination provision of the fee agreement as well as Lancaster's testimony describing his understanding of when Newell's representation of him ended. In light of *Baker*, however, we conclude that Newell's representation of Lancaster did not terminate when the People contend, but instead, as prescribed by Crim. P. 44(e), continued through the deadline for filing a notice of appeal.

### 1.     The Termination of Newell's Attorney-Client Relationship with Lancaster is Controlled by Crim. P. 44(e), Not the Fee Agreement

¶ 18     In *Baker*, the supreme court held that, notwithstanding an agreement between a defendant and trial counsel providing that

counsel would not represent the defendant on appeal, Crim. P. 44(e) dictates when the representation terminates. *See Baker*, 104 P.3d at 896 ("Even though counsel may have mistakenly believed that because he had not agreed to represent Baker on appeal, his responsibilities to his client ended at sentencing, . . . Crim. P. 44(e) provides otherwise."). Termination of representation pursuant to Crim. P. 44(e) requires the occurrence of an event set forth in subsections (I) through (IV) unless "otherwise directed by the trial court or *extended* by an agreement between counsel and a defendant." (Emphasis added.) Crim. P. 44(e) does not, however, contemplate any exception in cases where counsel and the defendant have agreed to terminate the representation *at an earlier date* — as in *Baker* and this case. To terminate representation earlier requires leave of the court. *See* Crim. P. 44(d)(1).[2]

---

[2] If Newell did not wish to file a notice of appeal on Lancaster's behalf, Newell could have discharged his duty to Lancaster by timely moving to withdraw (for instance, at sentencing) and requesting the appointment of the public defender to represent Lancaster on appeal, as Lancaster automatically qualified for the services of the public defender by virtue of his custodial status following sentencing. *Ronquillo v. People*, 2017 CO 99, ¶ 34.

¶ 19    In their brief on appeal, the People do not discuss Crim. P. 44. Instead, the People argue that Lancaster's testimony establishes that Newell's representation of him terminated in accordance with the fee agreement.  Specifically, they point to Lancaster's testimony at his Crim. P. 35(c) hearing in which he stated that, having met with Newell prior to his sentencing hearing, he understood that Newell would provide him no further assistance.  But we disagree that the attorney-client relationship terminated based upon Lancaster's subjective understanding.[3]

¶ 20    In support of their position, the People cite to *People v. Bennett*, 810 P.2d 661, 664 (Colo. 1991) — a civil case — for the proposition that counsel's duty to a client continues "until the client clearly understands, or reasonably should understand, that the relationship is no longer to be depended upon."  This is not the applicable standard in a criminal case, however.  Were it the standard, Crim. P. 44 subsections (d) (withdrawal of counsel) and (e) (termination of representation) would be rendered superfluous.

---

[3] We note that, although not raised by either party on appeal, the record shows that the district court did not discharge its duty at sentencing, pursuant to Crim. P. 44(e)(2), to "inform the defendant when representation shall terminate."

*See Welby Gardens v. Adams Cty. Bd. of Equalization*, 71 P.3d 992, 995 (Colo. 2003) (interpretations that render statutory provisions superfluous should be avoided); *see also People v. Bueno*, 2018 CO 4, ¶ 18 (rules of criminal procedure are construed employing the same interpretive rules applicable to statutory construction). Yet the People, in their appellate brief, do not attempt to reconcile their position with Crim. P. 44. However, we conclude that Crim. P. 44(e) is dispositive on the issue of when Newell's representation of Lancaster terminated.

2. *Baker* Is Not Meaningfully Distinguishable

¶ 21      The People contend that *Baker* is distinguishable, in any event. They contend that *Baker* was "[b]ased on" the fact that Baker's trial counsel agreed to submit his notice of appeal but then failed to do so. They argue that, because Newell never agreed to submit Lancaster's notice of appeal, there was no detrimental reliance and, therefore, *Baker* is inapposite. While we agree that Lancaster's situation is different from *Baker* in this way, we disagree that trial counsel's agreement in this regard was material to the holding in *Baker*.

¶ 22    Trial counsel's agreement to submit the notice of appeal was immaterial to the outcome in *Baker*.  Our supreme court held that trial counsel was obligated to ensure that Baker's appeal was perfected because he was counsel of record when the period for filing a notice of appeal under C.A.R. 4(b) expired.  104 P.3d at 896. A careful reading of *Baker* makes clear that its holding in no way hinged on Baker's counsel's agreement to file the notice of appeal as a courtesy.  Instead, the supreme court explained that trial counsel remained Baker's counsel of record because appellate counsel had not been appointed, trial counsel had not moved to withdraw, and the representation had not terminated pursuant to Crim. P. 44(e). *See id.* at 896-97.  Trial counsel's agreement to type and submit Baker's notice of appeal was immaterial to the holding because the court concluded that counsel had a *duty* to ensure that Baker's appeal was perfected.  *See id.*

¶ 23    *Baker* is not, therefore, meaningfully distinguishable based on the fact that Newell did not offer to submit Lancaster's notice of appeal.  Instead, because he remained Lancaster's counsel of record until he withdrew or the representation terminated — neither of which happened before the period for Lancaster to file a notice of

13

appeal under C.A.R. 4(b) expired — Newell, knowing that Lancaster wanted to appeal, had a *duty* to ensure that Lancaster's appeal was perfected.  *See id.*

### 3.     Newell's Failure to File Lancaster's Notice of Appeal Was Ineffective Assistance of Counsel

¶ 24     Newell's failure to file a notice of appeal on Lancaster's behalf without having been granted leave to withdraw amounted to constitutionally ineffective assistance of counsel under *Strickland*. Both prongs of the *Strickland* test are satisfied because Lancaster has shown that Newell disregarded specific instructions to file a notice of appeal.  *See Long*, 126 P.3d at 286-87.

¶ 25     We review the district court's factual findings for abuse of discretion, but review de novo the application of law to those factual findings.  *Carmichael v. People*, 206 P.3d 800, 807-08 (Colo. 2009).

¶ 26     The district court held an evidentiary hearing on Lancaster's Rule 35(c) petition at which it heard testimony from both Newell and Lancaster.  Based on this testimony, the district court found that Lancaster had communicated to Newell his desire to appeal. Indeed, the record establishes that Lancaster wanted to appeal and that Newell understood that desire.  Furthermore, based on the

discussion in Part II.B.2 of this opinion, Newell had a duty following sentencing to ensure that Lancaster's appeal was perfected. For these reasons, we conclude that Lancaster has established ineffective assistance of counsel. *See Baker,* 104 P.3d at 897; *Long,* 126 P.3d at 287; *see also People v. Houser,* 2013 COA 11, ¶ 42 n.5 (noting that counsel's "failure to perfect an appeal for a defendant who desired to appeal would be per se unreasonable"). Accordingly, we reverse the district court's order denying Lancaster's postconviction motion alleging ineffective assistance of counsel.

C.     Lancaster Is Entitled to Pursue His Direct Appeal Out of Time

¶ 27     Because the ineffective assistance of trial counsel deprived Lancaster of his right to direct appeal of his conviction, we conclude that he is entitled to pursue a direct appeal out of time. *See Peguero v. United States,* 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to . . . an appeal without showing that his appeal would likely have had merit."); *People v. Hill,* 296 P.3d 121, 125 (Colo. App. 2011) (the remedy for a defendant whose counsel failed to perfect an appeal is reinstatement of the defendant's right to an appeal); *Long,* 126 P.3d at 287 (same). Pursuant to C.A.R. 4(b), Lancaster has forty-nine

15

days from the issuance of our mandate in which to file his direct appeal. *People v. Boespflug*, 107 P.3d 1118, 1121 (Colo. App. 2004).

## D.    Lancaster's Other Claims

¶ 28    Because we conclude that trial counsel's failure to perfect Lancaster's appeal was ineffective assistance under *Strickland* entitling Lancaster to pursue a direct appeal, we need not and do not reach his additional claim in which he contends that the postconviction court erroneously denied the claims brought in his supplemental Crim. P. 35(c) motion as time barred.

## III.    Conclusion

¶ 29    For these reasons, we reverse the postconviction court's order denying Lancaster's Crim. P. 35(c) motion.  Based on this disposition, Lancaster may file his notice of direct appeal in this court within forty-nine days from issuance of the mandate, as provided by C.A.R. 4(b).

JUDGE TAUBMAN and JUDGE BERNARD concur.